Argued September 10, affirmed October 15, 1958

## SCHIEMAN et al v. STANLEY
330 P. 2d 353

*Dale Crabtree,* Stayton, and *Peery T. Buren,* Salem, argued the cause and filed a brief for appellant.

*Lawrence N. Brown,* Salem, argued the cause for respondents. With him on the brief was J. William Stortz, Salem.

Before Perry, Chief Justice, and Rossman, Warner and McAllister, Justices.

PERRY, C. J.

This is an action for money had and received. The

plaintiff prevailed in the trial court and the defendant appeals.

The facts are as follows: Defendant was the owner of land and entered into a contract to sell and deliver the carrots raised on his land to a cannery. He subsequently leased his land to his son and the son assumed the father's contractual obligations with the cannery. The son became indebted to a bank and to secure his indebtedness the defendant and the son assigned their interest in the proceeds to be derived from the sale of the carrots to the bank. The bank also demanded and received from the defendant a guarantee of payment of the son's indebtedness.

The plaintiffs were also growers of carrots and, on being approached by defendant's son, plaintiffs agreed with the son that their carrots might be harvested and marketed by the son by delivery to the cannery under the terms of the defendant's contract. Defendant had knowledge of this agreement with the plaintiffs. The plaintiffs' share under this agreement amounted to $701.45.

The defendant received from the cannery a check in the sum of $2,035.80, made payable to himself and the bank jointly. He indorsed this check, and the proceeds thereof were used to reduce his son's indebtedness at the bank to $901.40. At this same time defendant honored his guarantee by paying this balance.

The principal contention of the defendant on this appeal is that the trial court erred in finding the defendant received any money, or its equivalent in value, which belonged to the plaintiffs, and which, in equity and good conscience, he should pay to the plaintiffs.

In *Wagener v. United States Nat. Bank,* 63 Or 299, 127 P 778, a case wherein plaintiff issued a check to

defendant bank in payment of a debt of sixty-seven cents and the bank received credit of $67 from the bank upon which the check had been drawn, this Court said, p. 302:

"* * * We think, however, it is not necessary for the plaintiff to show that the money to which he had title, like he had to his horse or his cow, was received by the defendant to sustain this cause of action. It is sufficient if he show that by any process, which was treated by the parties as a money transaction, the defendant has received money or its equivalent which, in equity and good conscience, belongs to and should be paid to the plaintiff, and this is true although the plaintiff may never have had actual manual custody of the specie in question. We quote from the case of Mathewson v. Eureka Power works, 44 N. H. 289: 'The rule that the action for money had and received lies only where one party has received and has in his hands money which he has no right to retain has been long since relaxed; and it is sufficient to sustain the action that something has been received by the defendant which, under the circumstances of the case, ought, as between the parties, to be regarded as money.' "

Cited and approved in *First Nat'l Bank v. Noble et al.*, 179 Or 26, 168 P2d 354, 169 ALR 1426.

We are of the opinion the facts of this case fall within the above cited rule.

It is clear, when defendant received the check from the cannery, made payable to himself and the bank, it represented in part moneys due the plaintiffs. While defendant's obligation and contract with the bank required him to pay the proceeds of his crop to the bank, it did not require that he should use the moneys of the plaintiffs to pay his son's debt. Also, by applying the moneys of the plaintiffs to the indebtedness of his

son he relieved himself to that extent from liability under his guarantee.

The judgment of the trial court is affirmed.

ROSSMAN, J., dissenting.

The plaintiffs are entitled to judgment against the defendant only in the event that the defendant's son (Verne Stanley) sold the plaintiffs' carrots to the cannery (Western Oregon Packing Corporation) and the latter, upon purchasing them, became indebted to the plaintiffs. If that sort of transaction took place, the defendant, upon receiving the money, was, of course, bound to pay it to the plaintiffs. But that transaction did not occur.

The facts were that the defendant, whose farm was producing a crop of carrots, had agreed to sell the crop to the cannery. Before the crop was harvested, the defendant leased his farm to his son, Verne, and assigned to Verne the contract which he (defendant) had with the cannery. As the crop was maturing it developed that it would produce less tonnage than had been anticipated—450 tons. The plaintiffs' farm, which was also producing a crop of carrots, was adjacent to the defendant's. It was then thought that Verne should purchase the plaintiffs' crop and deliver it to the cannery. At that juncture, according to the brief presented to this court by the plaintiffs-respondents, the following occurred:

"During the year 1953 the Plaintiffs and the Defendant were neighboring farmers in the Stayton area and Vern Stanley, a son of the Defendant, was operating his father's farm. Both parties were raising carrots on their farms that year. Between August and November of 1953, son Vern Stanley discussed with Plaintiffs the matter of purchasing their carrots. The defendant himself strongly

favored purchasing Plaintiffs' carrots, his reason
beings that it would help to keep up the quota under
his growers contract with the Western Oregon
Packing Corporation. Being so encouraged by
Defendant, son Vern Stanley, in the forepart of
November, 1953, entered into a verbal agreement
with the Plaintiffs wherein Plaintiffs agreed to
sell their carrots to the Stanleys * * *."

It is clear that Verne, and not the defendant, was the
purchaser.

Accordingly, the plaintiffs sold their carrots, not
to the cannery, but to Verne. The cannery did not
become indebted to the plaintiffs, but to Verne. There
was no agreement between the plaintiffs and the
cannery. The latter did not know of the transaction
between the plaintiffs and Verne. So far as the record
indicates, the cannery had no intimation that the car-
rots which were delivered to it were grown upon land
other than the defendant's. When the cannery later
paid for the carrots, and in so doing made the check
payable to the defendant and to the bank, the plaintiffs
had no claim to that check nor to the money which it
represented. Their claim was against Verne, to whom
they had sold their crop. The majority opinion states:
"It is clear, when the defendant received the check
from the cannery, made payable to himself and the
bank, it represented in part moneys due to the plain-
tiffs." The above facts, in my belief, show that that
statement is erroneous.

Without developing the facts any further, I express
my conviction that the plaintiffs are not entitled to the
challenged judgment. It should be reversed.

I dissent.